# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT HOST INTERNATIONAL, INC., § § | | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-07-0048 |
| MASSEY-FAIR INDUSTRIAL CO., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a commercial breach of contract action, which was removed from state court by Defendant Paramount Farms, Inc. ("Paramount"). Paramount moves pursuant to 28 U.S.C. §1406 to transfer venue ("Motion") [Doc. # 4], contending venue is improper in the Southern District of Texas. Plaintiff Great Host International, Inc., doing business as Andalucia Nut Company ("Andalucia"), has responded [Doc. # 8] to the motion, and Paramount has replied [Doc. # 10]. Defendant Massey-Fair Industrial Co. ("Massey") has not submitted any briefing on the Motion. Upon consideration of the applicable law, as well as the parties' arguments, and all matters of record, the Court concludes that venue is improper here and transfers to the Central District of California.

## I.     BACKGROUND

Andalucia alleges that in January 2006, it contracted with Paramount, through Massey as a broker, for the purchase and delivery of 13,000 pounds of raw almonds. *See* Paramount Farms Order Form, Exhibit 2-B to Motion.  Andalucia in turn sold these almonds to a customer in Lebanon.  When the almonds arrived, however, they were spoiled.  Plaintiff's Original Petition ("Petition"), Exhibit 1 to Motion, ¶ 7.  Andalucia sued in state court asserting negligence, breach of contract, breach of Texas's Deceptive Trade Practices Act, fraud, and breach of fiduciary duty.

Plaintiff Andalucia is a Texas corporation with its principal place of business in Harris County.  Petition, ¶ 2.  Plaintiff alleges that jurisdiction and venue are proper in Texas because it resides here and both Defendants purposefully availed themselves of the laws and jurisdiction of this district.[1]  Paramount does not dispute that this Court has personal jurisdiction over the parties, but contends that the contract between itself and Andalucia contains a controlling forum selection clause that places venue exclusively in Los Angeles, California.

---

[1]    Andalucia asserts, but provides no evidence, that Paramount is either a Texas or a Delaware corporation with a corporate address in California.  Petition, ¶¶ 4, 5.  Paramount asserts that it is a California corporation.  Motion, at 4.  Massey is apparently a Georgia corporation doing business in Harris County.  Petition, ¶ 3; Motion, ¶¶ 3, 4.

The contract at issue is purportedly between seller "Paramount Farms" and buyer Andalucia, and is dated July 25, 2005. Contract, Exhibit 2-A to Motion, at 1. The copy of the contract in the record is not signed, however. Andalucia maintains in response to the Motion that it did not enter into a contract with Paramount. Andalucia states it only dealt with Paramount's broker, Massey, a broker located in Texas.[2] According to Andalucia, it had no direct contact with Paramount whatsoever until after the January 2006 shipment was discovered damaged. While Paramount does not dispute that pre-contract negotiations were through Massey, it argues that the contract is binding on Andalucia under Texas and California law and that, if the contract is binding, venue is governed by the contract's forum selection clause. Paramount also argues that the parties waived the right to argue that venue in Los Angeles, California is improper or inconvenient. Contract, Exhibit 2-A to Motion, at 3, ¶ 11.[3]

---

[2]  Each party contends Massey was the other's agent. Compare Petition, ¶ 7, with Ezell Declaration, ¶ 3. The contract refers to Massey as the "broker." *See* Exh. 2-A to Motion.

[3]  The contract also requires the application of California law. *Id*.

## II.     ANALYSIS

The dispositive question on the Motion is whether the forum selection clause binds the parties as to venue.[4]  Forum selection clauses are presumptively valid.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595(1991); *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997).  Although a party seeking to change venue under 28 U.S.C. § 1404 or § 1406 normally bears the burden of demonstrating that the change was justified, a "forum selection provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (1996).[5]

Rather than arguing that the forum selection clause itself is unreasonable or unenforceable, Andalucia contends that it did not sign, and thus did not enter into, a contract with Paramount to establish venue.  Andalucia urges that its own choice of forum for this suit should be respected.  Although a plaintiff's choice of venue is

---

[4]  Parties' requests to change venue are governed generally by 28 U.S.C. § 1404 or § 1406, even when there is an existing, contractual choice of forum. *See Stewart Organization, Inc. v. Ricoh Corp*, 487 U.S. 22, 28 (1988); *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001).  Paramount seeks transfer under § 1406.

[5]  Under Texas law, enforcement of forum selection clauses is mandatory unless enforcement of the clause would be unreasonable or unjust, or the clause is otherwise invalid.  *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005).

generally given significant weight in a § 1404(a) analysis,[6] a contractual forum selection clause (if not unreasonable) will control where venue is otherwise legally proper for disputes among the contracting parties. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue."); *ABC Rental Systems, Inc. v. Colortyme, Inc.*, 893 F.Supp. 636, 638 (E.D. Tex. 1995).[7]

Fundamentally, the parties' factual dispute is whether Andalucia and Paramount entered into a binding contract on or about July 25, 2005, as indicated by the document entitled "Contract." *See* Exhibit 2-A to Motion, at 1. "Whether the parties reached an agreement is a question of fact" under Texas law. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Andalucia contends first that it did not deal directly with Paramount until after the January 2006 almond shipment was rejected by the ultimate buyer. Paramount counters

---

[6] Factors considered under § 1404(a) include "the availability and convenience of witnesses and parties, . . . the location of books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference." *Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 170 (S.D. Tex. 1997).

[7] Andalucia also argues that venue is proper in Texas because the Court has personal jurisdiction over the parties. There is no dispute that personal jurisdiction is proper here.

with the testimony of Brian Ezell, the managing director of its almond division. *See* Declaration of Brian Ezell ("Ezell Declaration"), Exhibit 2 to Motion. Ezell points to an unsigned form contract prepared by Paramount dated July 25, 2005 that provided that Paramount would sell to Andalucia specified quantities of different types of almonds over the course of one year. *Id.*, ¶ 2. Ezell attests further that the terms of the contract were "negotiated directly with representatives of Andalucia and its broker, Massey-Fair Industrial, Inc.," and that a copy of the contract was given to Andalucia on or about July 25, 2005. *Id.*, ¶ 3. Ezell explains without contradiction that the parties negotiated "certain modifications for the types of almonds and the price." *Id*. Ezell also states that the contract was partially performed as Paramount filled several orders placed by Andalucia between September 2005 and the problematic order in January 2006. *Id.*, ¶ 4. Andalucia does not contradict these averments with any evidence. Indeed, Ezell's statements are consistent with allegations in the Petition, ¶ 6, in which Andalucia alleges that "Defendants contract[ed] with Plaintiff."[8]

Based on the evidence of record, Paramount contends that the July 2005 contract is binding on Andalucia even though Andalucia never signed the document. Paramount relies on the Uniform Commercial Code ("U.C.C."), arguing that the contract was made between "merchants," and Andalucia neither objected to the forum selection

---

[8]   Andalucia's president verified these allegations under oath.

clause nor specified any contrary terms in the negotiations. Paramount relies on § 2.207(b) of the Texas Business & Commerce Code and the comparable California provision, California Commerce Code § 2207(2), which provide essentially that (except under specified circumstances) supplemental terms included in a merchant's "acceptance" of another merchant's offer become part of the parties' contract. Under Texas § 2.207(b) and California § 2207(2), if the offering party timely objects to the supplemental terms sought by the other party or if the new proposed terms materially alter the offer, then the proposed terms do not become part of the contract. *See* TEX. BUS. & COM. CODE § 2.207(b)(1), (2); CAL. COM. CODE § 2207(2)(a), (b). Andalucia does not argue it did not see the July 2005 contract, that it sought to change Paramount's proposed forum selection clause, that it expressed any objections to that clause, or that the clause was a material change to the subject of the contract. As noted, Paramount has established without contradiction that Andalucia negotiated changes to the contract as to types and prices of certain nuts being purchased, but did not object to the forum selection clause, *see* Ezell Declaration, ¶ 3, and that Andalucia performed under the contract by placing orders for products that Paramount supplied, *see id.*, ¶¶ 3, 4. Under the California and Texas U.C.C., Andalucia therefore accepted the terms Paramount proposed and entered into a binding agreement.

On the limited record presented, the Court holds that the forum selection clause was part of a July 25, 2005 contract between Paramount as seller and Andalucia as buyer, and that clause is binding on the parties.[9]

## III.  CONCLUSION

Because there is a facially valid contract dated July 25, 2005 between Andalucia and Paramount, under the Uniform Commercial Code as adopted in Texas and California, the choice of forum clause in that contract is binding.  Accordingly, venue is only proper in the Central District of California and Andalucia waived its right to contest that venue.  Section 1406 requires the Court to "dismiss, or if it be in the interest of justice, transfer" the case.  Paramount asks that the case be transferred.  Plaintiff Andalucia expresses no preference on the matter.  There being no overriding reason to deny Paramount's request that Plaintiff's claims against it be transferred rather than dismissed, it is

**ORDERED** that Defendant Paramount Farms, Inc.'s Motion to Transfer Venue [Doc. # 4] is **GRANTED**.  It is further

---

[9] This is not a final determination of the matters in issue because discovery has not been conducted and the facts have not been fully explored.  There is, for example, little to no information in the present record as to Massey's role as a broker.  Nor has Massey submitted any briefing on this issue.

**ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Central District of California.

**SIGNED** at Houston, Texas, this **28th** day of **February, 2007**.

_____
Nancy F. Atlas
United States District Judge